*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MAURICE JONES, TAUQIR GORAYA and JOHN
NANOS,

        Plaintiffs/Counter-Defendants-
        Appellees,

v

KONSTANTIN VOYK and VERONIKA
PERSHINA, Individually and as Trustees of the
VOYK FAMILY DECLARATION OF TRUST,

        Defendants/Counter-Plaintiffs-
        Appellants,

and

JOSEPHINE KAREN JORDAN,

        Defendant/Counter-Plaintiff,

and

KONSTANTIN VOYK and VERONIKA
PERSHINA, Individually and as Trustees of the
VOYK FAMILY DECLARATION OF TRUST,

        Cross-Plaintiffs,

v

JOSEPHINE KAREN JORDAN,

        Cross-Defendant.

UNPUBLISHED
July 21, 2022

No. 357804
Washtenaw Circuit Court
LC No. 19-001082-CH

Before: MARKEY, P.J., and BOONSTRA and RIORDAN, JJ.

PER CURIAM.

Defendants/counter-plaintiffs/cross-plaintiffs Konstanin Voyk and Veronika Pershina, both individually and as trustees of the Voyk Family Declaration of Trust (the Voyk trust) (collectively, the "Voyk defendants") appeal by delayed leave granted[1] the trial court's order granting summary disposition in favor of plaintiffs/counter-defendants Maurice Jones, Tauquir Goraya, and John Nanos (collectively, "plaintiffs") and dismissing the Voyk defendants' counterclaim. We vacate the trial court's order and remand for further proceedings consistent with this opinion.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case presents the question of whether certain restrictive covenants may be enforced to prevent the division of the subject property (Lot 17 of the Saginaw Hills Estates Subdivision) into two or more parcels. More specifically, the issue on appeal is whether there is a genuine issue of material fact regarding whether the Saginaw Hills Development Company (Saginaw Hills Development)—the entity that recorded the restrictive covenants—owned the property as it claimed. Plaintiffs are the owners of nearby lots in the subdivision. Defendant/counter-plaintiff/cross-plaintiff Josephine Karen Jordan (Jordan), the owner of Lot 17, sold part of the property to the Voyk trust in 2019.

The available chain of title for Lot 17 reflects that, in 1988, Richard and Nancy Rogers conveyed a parcel of real property that included what is now referred to as Lot 17 to the Cooch Development Company (Cooch Development) by warranty deed. In 1989, Saginaw Hills Development recorded with the Washtenaw County Register of Deeds a plat for a subdivision, Saginaw Hills Estates, consisting of 17 residential lots. The platted property included the parcel that the Rogerses had conveyed to Cooch Development the previous year. The chain of title provided to this Court does not reflect how or whether title to that parcel (or to Lot 17—which was included within it) was conveyed, directly or indirectly, from Cooch Development to Saginaw Hills Development.[2]

---

[1] *Jones v Jordan*, unpublished order of the Court of Appeals, entered September 9, 2021 (Docket No. 357804).

[2] Nothing in the record reflects a legal relationship (or identity of interest) between the two entities, other than it appears that John E. Cooch is a principal of each. To the contrary, it appears from publicly-available records that Cooch Development was incorporated in 1979 and dissolved in 1995. See LARA records found at https://tinyurl.com/2ttcn3ms (last accessed June 27, 2022). Saginaw Hills Development was separately incorporated in 1983 as Saginaw Hills Land, Sea and Space Development Company and changed its name to Saginaw Hills Development Company in 1985. See LARA records found at https://tinyurl.com/mwzt4djy (last accessed June 27, 2022). As of 1985, both Saginaw Hills Development and Cooch Development appear to have used the same registered office address. Compare https://tinyurl.com/2ttcn3ms and https://tinyurl.com/mwzt4djy.

On the same day in 1989 that Saginaw Hills Development recorded the plat, it also recorded a document entitled "Restrictions, Covenants, and Notices for Saginaw Hills Estates" (the 1989 Restrictions). The 1989 Restrictions contained the following language relevant to this appeal:

> In consideration of the plat approval of the Saginaw Hills Estates Subdivision, the undersigned owners hereby place the following covenants and restrictions on the property, and declare the same to be binding upon all subsequent owners. These covenants and restrictions shall run with the law; each person hereafter accepting a deed or other conveyance of the property shall take subject to these covenants and restrictions.
>
> * * *
>
> 1. <u>Single-Family Usage</u>. Lots shall be improved solely for single-family residential use.
>
> * * *
>
> 4. <u>Division of Parcels</u>. Individual lots may not be divided.
>
> * * *
>
> 14. <u>Enforcement</u>. Enforcement of the restrictions in Part I shall be by proceedings at law or in equity, against any person or persons violating or attempting to violate any covenant or restriction, either to restraint violation or recover damages. Proceedings may be brought by any person owning any lot to which these restrictions apply, or by the Washtenaw County Health Department, the Michigan Department of Natural Resources, and/or Scio Township.

The document was signed by John E. Cooch, whose signature block indicates that he was—and was signing as—the president of Saginaw Hills Development. It was also signed by various other persons (who presumably were owners of property located within the platted area). There is no signature from any person purporting to represent Cooch Development.

Lot 17 (or portions of it) was conveyed to several different persons and entities by quit claim or warranty deeds over the next 20-plus years; from our review, none of these deeds specifically referenced any deed restrictions or recorded covenants, although one deed did state that the conveyance was "subject to all matters of record." In 1996, Robert and Edith Mix conveyed a portion of Lot 17 by warranty deed to Christopher and Rebecca Gahman. In 2000, the Gahmans conveyed that portion of Lot 17 to other parties.[3] In 2004, Robert Mix conveyed a

---

[3] Plaintiffs represented in the brief in support of their motion for summary disposition that the conveyance of this portion of Lot 17 was in the nature of a boundary adjustment with an adjacent property, and not a land division.

different portion of Lot 17 (the portion the parties appear to be referring to as Lot 17) to Jordan.[4] Jordan provided an affidavit to the trial court that contained her explanation of certain issues relating to Lot 17. Relevant to the issue of chain of title, the Jordan affidavit stated:

> 1.      I became familiar with Lot 17 and Saginaw Hills Estate Subdivision in 1992 when I moved in as a tenant to 1024 Westview Way. I knew one of the people involved in the development of Saginaw Hills Estates Subdivision, and had a purchase agreement to purchase Lot 17 when title to the land was resolved. In the meantime, I lived at 1024 Westview Way and paid funds into an escrow account for the eventual purchase of Lot 17.

> 2.      One of the reasons that title had to be cleared up was that John Cooch, through his company Cooch Development Company, was the titleholder for land which encompassed Lot 17. In October of 1989, the land that encompassed Lot 17 was owned by Cooch Development Company, not Saginaw Hills Development Company. Because Cooch Development Company did not sign the deed restrictions in October, 1989, I do not believe that the deed restrictions recorded in October, 1989 bind Lot 17.

> 3.      Eventually, Cooch's Title was extinguished, and Lot 17 was conveyed to several parties, and eventually to me. My agreements to purchase Lot 17 with these prior parties in the chain of title were oral, but the agreements were successful because all of the parties were personal friends of mine. I continued to reside at 1024 Westview Way from 1992 until I actually acquired title to Lot 17 in 2004, and I still reside there today.

Jordan asserted via her affidavit that the Scio Township Board approved a "tax parcel split" to divide Lot 17 into two parcels in 2017. Jordan further averred that she sold one of the parcels (i.e., part of Lot 17) to Voyk and Pershina in 2019. Also in 2019, plaintiffs recorded an affidavit with the Washtenaw County Register of Deeds, stating that Jordan had sold part of Lot 17, reciting the pertinent 1989 Restrictions, and attesting that plaintiffs had neither consented to the division of Lot 17 nor waived their right to enforce the 1989 Restrictions.

Plaintiffs subsequently filed suit seeking declaratory and injunctive relief. The complaint alleged that plaintiffs were owners of lots in Saginaw Hills Estates and sought to enforce the 1989 Restrictions against Jordan and the Voyk defendants. Plaintiffs requested that the trial court quiet

---

[4] Further muddying the waters, the Voyk defendants, in their brief in support of their motion for summary disposition, asserted that Jordan purchased Lot 17 in 1995, and attached a 1995 quitclaim deed purporting to convey Lot 17 from Jordan *to* Theodor Von Voigtlander. Jordan asserted in an affidavit that she did not obtain title to Lot 17 until 2004; it is not clear from the record what, if any, interest she may have had in Lot 17 in 1995 to convey to Von Voigtlander. In any event, the parties appear to agree at this point that Jordan owned Lot 17 as of 2004, so this Court will accept that as true for the purposes of this appeal; we make no determination regarding the date on which Jordan acquired ownership of Lot 17.

title to Lot 17 and order that no party could own or convey less than all of Lot 17 and that not more than one residence could be built on Lot 17.

Jordan answered plaintiffs' complaint and also filed a counterclaim against plaintiffs, seeking an amendment to the Saginaw Hills Estates plat that would designate the portion of Lot 17 she had sold to the Voyk defendants as Lot 18. The Voyk defendants also answered the complaint and filed a counterclaim against plaintiffs for trespass and slander of title; the Voyk defendants additionally filed a cross-claim against Jordan, seeking rescission of the sales agreement between them.

Plaintiffs moved for summary disposition under MCR 2.116(C)(8), (9), and (10), arguing that the 1989 Restrictions were clear and unambiguous, were included in Jordan's chain of title, and expressly barred the division of Lot 17, and that the 1989 Restrictions specifically authorized the owners of property within the subdivision, e.g., plaintiffs, to enforce the 1989 Restrictions. Jordan replied to plaintiffs' motion and argued that summary disposition should be granted in her favor for the reason (among others) that the 1989 Restrictions did not apply to Lot 17 because the owner of the lot (Cooch Development) did not sign the Restrictions.[5]

Following a hearing, the trial court granted plaintiffs' motion for summary disposition, stating in relevant part:

> Mr. Lloyd [plaintiffs' counsel], I agree with your analysis. I think the covenants run with the land, they're clear, they're unambiguous. I don't find they've been waived of [sic] anything. They made it clear. They filed an affidavit, they sent it to the title company, the register of deeds; that's notice to the world. And they also called the realtor directly. They should not have proceeded with the closing. It should not have gone through. And so there's consequences to that. So I don't find that to be a waiver. It's, if anything it was very clear we're not waiving it and you shouldn't go through with the closing, so, maybe the realtor should have done something more; that's a whole different question.
>
> I guess what's left is this idea of trespass because you're saying your client thought he didn't encroach, maybe he didn't encroach, he moved it out right away. I agree with you. I can't really imagine what the damages are. I suspect it was just a tactical or strategic thing to try to get your clients to do something else.
>
> Your motion is granted, Mr. Lloyd.

The trial court did not specifically address the ownership of Lot 17 at the time Saginaw Hills Estates was platted (and the 1989 Restrictions signed). It entered an order granting plaintiffs' motion, and subsequently denied the Voyk defendants' motion for reconsideration. This appeal

---

[5] Plaintiffs and the Voyk defendants each also moved for summary disposition with respect to the Voyk defendants' counterclaim. The trial court did not grant either of those motions, and that ruling is not at issue in this appeal.

-5-

followed, limited to the issue of whether the 1989 Restrictions can be enforced against the owners of Lot 17; more specifically, whether there is a genuine issue of material fact regarding whether Saginaw Hills Development owned the property at the time it signed the 1989 Restrictions.

On appeal, by leave of this Court to expand the record,[6] plaintiffs have provided a copy of an affidavit recorded with the Washtenaw County Register of Deeds in 1992. The affidavit is by Thomas D. Richardson, an attorney and owner of Liberty Title Company, and states in relevant part that the deed conveying the Rogers parcel to Cooch Development contained "a Scrivener's Error in that the Grantor [sic: "Grantee"] should not have been the Cooch Development Company, but instead should have been the Saginaw Hills Development Company," and that "it was represented to Liberty Title Company that the Cooch Development Company and Saginaw Hills Development Company were one and the same corporation, having undergone either a name change or a merger." This document was not presented to the trial court. In response, the Voyk defendants provided, also by leave of this Court to expand the record,[7] various documents relating to a Washtenaw Circuit Court action entitled *Von Voigtlander v Krause et al*, Case No. 94-3554-CZ, additional documents relating to a Washtenaw Circuit Court action entitled *Cooch Development Co v Jordan*, Case No. 94-01923-CH, as well as a Commitment for Title Insurance and property tax records, all to refute plaintiffs' assertion that the 1988 deed from the Rogerses to Cooch Development contained a "scrivener's error" and to demonstrate that it was Cooch Development (not Saginaw Hills Development) that held title to and paid property taxes for Lot 17 at relevant times. These documents also were not presented to the trial court.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's grant or denial of a motion for summary disposition. *Piccione v Gillette*, 327 Mich App 16, 18-19; 932 NW2d 197 (2019). "Under MCR 2.116(C)(10), summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. at 19 (quotation marks and citation omitted). A reviewing court must consider the evidence in a light most favorable to the nonmovant in determining whether a genuine issue of material fact exists. See *Skinner v Square D Co*, 445 Mich 154, 165 n 9; 516 NW2d 475 (1994). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Piccone*, 327 Mich App at 19 (quotation marks and citation omitted).

Additionally, this Court reviews de novo the interpretation of contractual language, including deeds and other recorded instruments. See *In re Ruddell Estate*, 286 Mich App 391, 402-403; 780 NW2d 884 (2009). We also review de novo, as a question of law, the nature and

---

[6] See *Jones v Jordan*, unpublished order of the Court of Appeals, entered January 14, 2022 (Docket No. 357804).

[7] See *Jones v Jordan*, unpublished order of the Court of Appeals, entered February 7, 2022 (Docket No. 357804).

scope of property interests arising under a plat dedication. *2000 Baum Family Trust v Babel*, 488 Mich 136, 143; 793 NW2d 633 (2010).

III.  ANALYSIS

The Voyk defendants argue that the trial court erred by granting plaintiffs' motion for summary disposition, because a genuine issue of material fact exists regarding whether Saginaw Hills Development owned the property at the time it signed the 1989 Restrictions (and therefore regarding whether the 1989 Restrictions apply to Lot 17).  We agree.

In *Conlin v Upton*, 313 Mich App 243, 255-256, 259-260; 881 NW2d 511 (2015), this Court addressed restrictive covenants regulating the use of real property, stating in relevant part:

> Under Michigan's common law, a property owner normally cannot be contractually bound by a covenant regulating the use of his or her real property without his or her agreement to the covenant.  Therefore, a group of property owners cannot impose building and use restrictions on a neighboring property owner without his or her consent.  See *Eveleth* [*v Best*], 322 Mich [637] at 641–642[; 34 NW2d 504 (1948)] (holding that the restrictions did not apply to the lot at issue because the restrictions were not imposed by a common owner and were not agreed to by the current lot owners or by their grantors in the chain of title); *Hart v Kuhlman*, 298 Mich 265, 267; 298 NW 527 (1941).  ("The rights of defendant cannot be made to rest upon a mere neighborhood plan to which he was not a consenting party."); *Doxtator–Nash Civic Ass'n v Cherry Hill Prof Bldg, Inc*, 12 Mich App 468, 472; 163 NW2d 262 (1968).  ("The fact that other lot owners in the subdivision who were strangers to the title to defendants' property may have agreed on a plan of restrictions governing their property could not result in restrictions binding upon defendants or their predecessors in title.").  However, a party may be bound by a covenant to which he or she did not personally agree if that party's predecessor in interest established the restrictive covenant and the covenant appears in the owner's record title.  See *Sanborn v McLean*, 233 Mich 227, 230; 206 NW 496 (1925).

> A covenant affecting the use of real property may be personal or may run with the land, as determined by the parties' intent.  See *Greenspan v Rehberg*, 56 Mich App 310, 320–321; 224 NW2d 67 (1974), citing, among other authorities, *Mueller v Bankers' Trust Co*, 262 Mich 53, 56; 247 NW 103 (1933).  A covenant affecting the use of real property runs with the land if, in relevant part, the parties express their intent to bind their successors and assigns.  *Greenspan*, 56 Mich App at 320–321.  If the covenants are structured to run with the land, a subsequent purchaser will be bound by the covenants if he or she purchases the land with actual or constructive notice of the covenants.  *Phillips v Naff*, 332 Mich 389, 393; 52 NW2d 158 (1952).  A subsequent purchaser is on constructive notice that his or her

-7-

use of the property will be subject to the covenants when the covenants appear in the purchaser's chain of title.[8]

In this case, it is undisputed that the 1989 Restrictions were intended to run with the land; indeed, the document says this explicitly. The question therefore becomes whether any of Jordan's predecessors in interest, as owners of Lot 17, agreed to the 1989 Restrictions, such that Jordan would have taken ownership of Lot 17 subject to the restrictive covenants contained in the 1989 Restrictions. Viewing the evidence in the light most favorable to the Voyk defendants, *Skinner*, 445 Mich at 165 n 9, we conclude that the trial court was presented with a genuine issue of material fact regarding the answer to this question, and the trial court therefore erred by resolving the matter on the record before it at the summary disposition stage.

The record evidence provided to the trial court showed that Lot 17 was conveyed to Cooch Development in 1988, and that Saginaw Hills Development signed the 1989 Restrictions the following year. It appears that Saginaw Hills Development subsequently entered into bankruptcy proceedings, as Lot 17 was conveyed to a purchaser by the bankruptcy trustee in 1994. This suggests that Saginaw Hills Development acquired title to Lot 17 at some point prior to the conveyance in bankruptcy; however, there is no evidence in the record that this in fact occurred (or when it occurred). None of the subsequent deeds in the chain of title refer to the 1989 Restrictions explicitly; in fact, only Robert Mix's deed to Jordan mentions "restrictions of record," although one previous deed in the chain of title did refer to "matters of record." The documentary evidence provided to the trial court therefore did not establish as a matter of law that Saginaw Hills Development owned Lot 17 at the time it recorded the 1989 Restrictions (which would have indicated an intent that Lot 17 be bound by the restrictive covenants contained in that document). *Sanborn*, 233 Mich at 230.[9]

The Richardson affidavit does not conclusively resolve the issue. The affidavit was recorded three years after Saginaw Hills Estates was platted by an entity (Saginaw Hills Development) that appears—from the current record—to have been outside the chain of title. It was signed by a representative of a different title company than that which furnished the 1988 warranty deed from the Rogerses to Cooch Development. The affidavit merely states that "it was represented to Liberty Title Company that Cooch Development Company and Saginaw Hills Development Company were one and the same." It does not explain who made the representation or on what basis (given that it appears that the two entities are separately-incorporated). Without more, the affidavit also does not resolve as a matter of law the issue of who owned Lot 17 or

---

[8] We note that, in their brief on appeal, the Voyk defendants duplicate a large portion of the *Conlin* opinion (including the portion quoted in this opinion), but without designating it as such. We caution counsel that, in the future, they should provide proper attribution and citation, so as not to leave the false impression that words taken from a judicial opinion are their own.

[9] It appears from our review that neither Robert Mix nor any of his predecessor owners of Lot 17, at least as reflected in the chain of title made available to us, signed the 1989 Restrictions. The pertinent issue therefore appears to be the ownership status of Lot 17 at the time the 1989 Restrictions were signed.

whether John E. Cooch's signature (on behalf of Saginaw Hills Development) could or was intended to bind the owner of Lot 17 to the 1989 Restrictions. Further, the statement regarding a "Scrivener's Error" indicates that the "Grantor" should have been identified (on the 1988 warranty deed conveying Lot 17) as Saginaw Hills Development Company; yet, it is undisputed that the Rogerses were the grant*ors*; Cooch Development was listed as the grant*ee*. While it is reasonable to presume that this was, itself, a simple scrivener's error, we believe that this is among the factual issues that the trial court, rather than this Court, should resolve. Moreover, the affidavit presents a bare conclusion without any support or explanation, and again is offered by someone outside the chain of title. Its accuracy also is called into question by the supplemental documents that the Voyk defendants have provided on appeal. The trial court was not given the opportunity to review the Richardson affidavit or any of these other documents when deciding the issues before it.[10]

We conclude that the trial court erred by granting plaintiffs' motion for summary disposition without addressing the significant factual dispute concerning Lot 17's ownership at the time the 1989 Restrictions went into effect. *Id*. We further conclude that it is the trial court that should evaluate, in the first instance, both the Richardson affidavit and the supplemental documents submitted by the Voyk defendants. Although we granted the parties' respective motions to supplement the record, we conclude that the piecemeal submission to this Court of supplemental documents that the parties failed to provide to the trial court in connection with summary disposition motions is improper and that we should not supplant the proper role of the trial court in deciding these issues in the first instance. Accordingly, we vacate the trial court's order granting plaintiffs' motion for summary disposition and remand for further proceedings.[11]

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Mark T. Boonstra
/s/ Michael J. Riordan

---

[10] On remand, and without restricting the discretion of the trial court, if the trial court does consider any of these documents in the context of a summary disposition motion, it may also consider whether this evidence could have been presented at the original time set for hearing dispositive motions. See *Woods v SLB Prop Mgt, LLC,* 277 Mich App 622, 630; 750 NW2d 2128 (2008) ("We find no abuse of discretion in denying a motion resting on a legal theory and facts which could have been pled or argued prior to the trial court's original order.") (citation and quotation marks omitted).

[11] We note that, although we are vacating the trial court's order granting summary disposition in favor of plaintiffs, we do not disturb its specific holdings that are not the subject of this appeal.